IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH RHONE                    :              CIVIL ACTION
                                :
          v.                    :
                                :
DAVID H. LARKINS, et al.        :              NO. 99-743


MEMORANDUM

Bartle, J.                                      June 7, 2016

          Before the court is an "independent action for relief
from order denying Section 2255 [sic] [2254] motion or,
alternatively, for relief under Rule 60(d) F.R.Civ.P." filed by
counsel for petitioner Joseph Rhone ("Rhone").

          In May 1991, a jury in the Pennsylvania Court of
Common Pleas for Philadelphia convicted Rhone of first degree
murder, criminal conspiracy, and possession of an instrument of
crime for the murder of Herschel Williams ("Williams") in
November 1975.  Although Rhone was taken into custody within
minutes of the 1975 shooting, his trial was delayed until 1991
because, following a suppression hearing at which the court
determined statements Rhone made to the police could be used
against him at trial, Rhone fled while free on bail.

          Rhone was represented at trial by Norris Gelman
("Gelman").  At trial, the Commonwealth offered evidence that
"Rhone and a co-defendant, Robert Hoskins ran toward Williams

and emptied their guns into his body" as he was loading his two young children into his car.  See Commonwealth v. Rhone, No. 2750, at 1 (Pa. Ct. Comm. Pleas 1996).  Rhone and Hoskins then fled in a get-away car driven by another co-defendant, Lonnie Dawson.  The three men were arrested when "[a] short time later a Police Officer, having been alerted by Police Radio, saw the get-away car with the three defendants on the expressway."  See id. at 2.  The Commonwealth introduced evidence that Rhone made several statements to the police after he was arrested:

> [i]n the first statement, given by
> defendant, he stated that he was just a
> passenger in a car driving from South
> Philadelphia to Germantown with nothing
> unusual occurring.  Later, the defendant was
> rewarned and admitted being at the murder
> scene and hearing gunshots.  The defendant
> also admitted that one co-defendant exited
> the car before he heard the gunshots.
> However, the defendant maintained that he
> never saw a gun and stayed in the car
> reading a newspaper.

Post-verdict motions were unsuccessful, and Rhone was sentenced to life in prison plus seven and a half to fifteen years.

Gelman filed a direct appeal of the conviction on behalf of Rhone to the Pennsylvania Superior Court.  He argued that the Commonwealth and its witnesses made inappropriate comments to the jury at trial, that the trial judge erred in admitting certain evidence and in instructing the jury, and that

-2-

the verdict was against the weight of the evidence.  The
Superior Court considered the merits of these allegations and
affirmed the conviction because "ample evidence of guilt was
presented at trial."  See Commonwealth v. Rhone, 619 A.2d 1080,
1081 (Pa. Super Ct. 1993).  The Pennsylvania Supreme Court
denied Rhone's request for allowance of an appeal.  See
Commonwealth v. Rhone, 627 A.2d 731 (1993).

In June 1995, Rhone filed a pro se petition for relief
under the Pennsylvania Post Conviction Relief Act ("PCRA"),
42 Pa. Cons. Stat. § 9541 et seq.  He was appointed new counsel,
Donald M. Padova, who filed an amended PCRA petition asserting
that Gelman had been ineffective at trial in failing to object
to or call a mistrial because of prejudicial comments by the
prosecutor.  He also alleged that Gelman was ineffective in
failing to call a police officer who testified in a prior
proceeding and would have impeached trial testimony concerning
the "Jeff" cap that Rhone was wearing when arrested.  He
asserted that Gelman should have argued that it was error to
exclude testimony concerning the alleged beating of a co-
defendant.  Finally, he claimed that Gelman should have raised
his own ineffectiveness on appeal.  The PCRA evaluated Rhone's
claims on the merits and found that they were not meritorious.
See Commonwealth v. Rhone, No. 2750, at 6 (Pa. Ct. Comm. Pleas

-3-

1996).  The Superior Court affirmed, and the Pennsylvania Supreme Court denied Rhone's request for an appeal.

In May 1998, Rhone filed a second pro se PCRA petition alleging ineffective assistance of trial counsel and PCRA counsel.  This petition was dismissed as untimely.

In February 1999, Rhone filed a federal petition in this court asserting ten claims under 28 U.S.C. § 2254.[1]  The

---

1.   Rhone alleged, in full:

>    A.   Ground One:  Did the prosecution deprive petitioner of a fair trial and due process when it was permitted to infer to the jury that the motive for the murder was drugs, when there was know [sic] proof that any such motive existed?
>
>    B.   Ground Two:  Did the trial court commit constitutional reversable [sic] error by permitting the prosecution to repeatedly refer to petitioner reaching for a gun at the time of his arrest over counsel's objections to the admissibility of the evidence?
>
>    C.   Ground Three:  Did the trial court commit constitutional error by not permitting the defense to put a witness on the stand concerning police brutality directly involved in this case and also in not allowing the petitioner to challenge the voluntariness of his statement in front of the jury?
>
>    D.   Ground Four:  Did the prosecution commit prosecutorial misconduct of a constitutional dimension and deprive petitioner of a fair trial and due process when the prosecution informed the jury that there is a witness

-4-

first five claims alleged both that the prosecution committed

misconduct and that the trial court erred in allowing certain

evidence to be admitted.  The next four claims alleged that

trial counsel was ineffective.  In particular, Rhone asserted

that Gelman was ineffective in failing to object to comments

made by the Commonwealth at trial and in failing to call "a

known witness to impeach the testimony of a key witness."  His

who had not testified but who if she had,
would have given inculpatory evidence?

E.  Ground Five:  Did the prosecutor commit
prosecutorial misconduct by misstating
evidence and deprive petitioner of due
process and a fair trial?

F.  Ground Six:  Was petitioner deprived of
due process when trial counsel failed to
object to prejudicial and inflammatory
remarks during closing argument?

G.  Ground Seven:  Was trial counsel
constitutionally ineffective for failure to
call a known witness to impeach the
testimony of a key witness?

H.  Ground Eight:  Was trial counsel
constitutionally ineffective for failure to
object to the district attorney opening
statement that petitioner was reaching for a
gun at the time of his arrest?

I.  Ground Nine:  Was trial counsel
constitutionally ineffective for failure to
object [sic] the prosecution's improper and
prejudicial statements before the jury?

J.  Ground Ten:  Did petitioner exhaust all
his state remedies?

tenth claim asserted that the first nine claims had been procedurally exhausted.  In this regard, he claimed that PCRA counsel was ineffective in not pursuing Gelman's ineffectiveness as a ground for relief in the amended PCRA petition.

In an August 1999 Report and Recommendation ("R & R"), the magistrate judge recommended that this court deny Rhone's § 2254 petition without a hearing.  The R & R noted that the first eight claims had not been presented to the Pennsylvania courts on direct appeal or in his amended PCRA petition.  Thus, Rhone was not entitled to relief on these grounds.  Yet, the R & R nonetheless considered Rhone's claims that trial and PCRA counsel were ineffective on the merits.  The R & R explained that the claims that trial counsel was ineffective lacked merit. The R & R determined that PCRA counsel had reasonably exercised his professional judgment in pursuing only some of Rhone's claims in the amended PCRA petition.  It also rejected Rhone's claims of actual innocence.

In September 1999, the court adopted the R & R of the Magistrate Judge denying Rhone's § 2254 petition.  Our Court of Appeals denied a certificate of appealability.  Rhone filed a third PCRA petition in May 2005, which was dismissed as untimely.

I.

A state prisoner may seek relief in federal court if he believes that his incarceration violates federal law. See 28 U.S.C. § 2254. However, the Antiterrorism and Effective Death Penalty Act of 1996 limits the power of a federal court to award relief to a state prisoner who has filed a successive habeas corpus petition. See Tyler v. Cain, 533 U.S. 656, 660 (2001). Claims asserted in a second or successive habeas petition under § 2254 must be dismissed without prejudice if they were presented in a previous petition.[2] See 28 U.S.C. § 2244(b)(1). In addition, a claim that was not previously presented must be dismissed without prejudice unless it relies on a new and retroactive rule of constitutional law, or new facts showing a high probability of actual innocence. See 28 U.S.C. § 2244(b)(2); Gonzalez v. Crosby, 545 U.S. 524, 529-30 (2005).

Likewise, habeas relief is not available unless "the applicant has exhausted the remedies available in the courts of the State." See 28 U.S.C. § 2254(b)(1)(A). A district court "normally cannot review a federal claim for post-conviction relief that has already been rejected by a state court on the

---

2. The petitioner must obtain permission to file a second or successive application from the Court of Appeals. See 28 U.S.C. § 2244(b)(3).

basis of an independent and adequate state procedural rule."
See <u>Cox v. Horn</u>, 757 F.3d 113, 119 (3d Cir. 2014).  Claims not
previously presented to the state courts are procedurally
defaulted.

Nonetheless, both successive and procedurally
defaulted claims are reviewable by the federal court if the
petitioner demonstrates that there was cause for the default and
prejudice as a result.  See <u>Norris v. Brooks</u>, 794 F.3d 401, 404
(3d Cir. 2015); <u>Cox</u>, 757 F.3d at 119.

In 1999, when this court addressed Rhone's original
habeas petition, we were bound by the rule announced in <u>Coleman
v. Thompson</u>, 501 U.S. 722 (1991), "that error by counsel in
state post-conviction proceedings could not serve as 'cause'
sufficient to excuse procedural default of a petitioner's
claim."  See <u>Cox</u>, 757 F.3d at 119 (citing <u>Coleman</u>, 501 U.S. at
752-54).  In 2012, the U.S. Supreme Court changed course.  It
held that attorney errors in initial review collateral
proceedings may qualify as cause for a procedural default where:

> (a) the default was caused by ineffective
> assistance of post-conviction counsel or the
> absence of counsel (b) in the initial-review
> collateral proceeding (i.e., the first
> collateral proceeding in which the claim
> could be heard) and (c) <u>the underlying claim
> of trial counsel ineffectiveness is
> "substantial," meaning "the claim has some
> merit,"</u> analogous to the substantiality

> requirement for a certificate of
> appealability.

Cox, 757 F.3d at 119 (emphasis added) (citing Martinez v. Ryan,
132  S. Ct. 1309, 1316-18 (U.S. 2012)).  Thus, where a
petitioner seeks relief by a successive petition or in spite of
a procedural default, the default must have been caused by the
failure of post-conviction counsel in the initial review
collateral proceeding to assert a meritorious challenge to the
effectiveness of trial counsel.

A year later, in Trevino, "the Supreme Court clarified
that the Martinez rule applied not only to states that expressly
denied permission to raise ineffective assistance claims on
direct appeal . . . but also to states in which it was
'virtually impossible,' as a practical matter, to assert an
ineffective assistance claim before collateral review."  See
Cox, 757 F.3d at 119 (citing Trevino v. Thaler, 133 S. Ct. 1911,
1915 (2013)).  Where a "state procedural framework, by reason of
its design and operation, makes it highly unlikely in a typical
case that a defendant will have a meaningful opportunity to
raise a claim of ineffective assistance of trial counsel on
direct appeal, [the] holding in Martinez applies."  See Trevino,
133 S. Ct. at 1921.  We will assume for present purposes that
our Court of Appeals would apply Martinez to Pennsylvania

-9-

criminal proceedings that took place prior to Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002).  See Cox, 757 F.3d at 124 n.8.

II.

Counsel for Rhone has submitted a motion entitled "independent action for relief from order denying Section 2255 [sic] [2254] motion or, alternatively, for relief under Rule 60(d) F.R.Civ.P."  The motion does not clearly state on what grounds Rhone seeks relief, but it makes reference to Martinez, Rule 60(d)(1), and Rule 60(d)(3).  It also claims that relief should be granted because Rhone is actually innocent.  Rhone relies heavily on the alleged ineffectiveness of trial and PCRA counsel.  He claims that the trial court engaged in various errors and that the Commonwealth made prejudicial comments at trial.

We begin with Rhone's claims that Martinez provides an avenue for relief.  Our Court of Appeals has recognized that Rule 60(b)(6) of the Federal Rules of Civil Procedure is an appropriate vehicle to pursue relief under Martinez.  See Cox, 757 F.3d at 115.  Rule 60(b)(6) permits a court to award relief from a final judgment for "any other reason that justifies relief."  See Fed. R. Civ. P. 60(b)(6).  "[C]ourts are to dispense their broad powers under 60(b)(6) only in extraordinary

-10-

circumstances where, without such relief, an extreme and unexpected hardship would occur." United States v. Doe, 810 F.3d 132, 152 (3d Cir. 2015) (quoting Cox, 757 F.3d at 120). "The Supreme Court has said that '[s]uch circumstances will rarely occur in the habeas context.'" Norris, 794 F.3d at 404 (quoting Gonzalez, 545 U.S. at 535).

We apply "a flexible, multifactor approach to Rule 60(b)(6) motions . . . that takes into account all the particulars of a movant's case." See Doe, 810 F.3d at 152 (quoting Cox, 757 F.3d at 122). We consider the merits of the underlying claim of ineffective assistance of trial counsel, the petitioner's diligence in seeking relief, the time between the dismissal of the petitioner's § 2254 petition and his Rule 60 motion, and the nature of the petitioner's sentence. See Doe, 810 F.3d at 152-53. "Martinez, without more, does not entitle a habeas petitioner to Rule 60(b)(6) relief." Cox, 757 F.3d at 124.

Rhone seeks relief under Martinez, alleging that PCRA counsel was ineffective in failing to raise trial counsel's ineffectiveness in the initial review collateral proceeding. Relief under Rule 60(b)(6) and Martinez depends on the merits of the underlying ineffective assistance of counsel claim. See Cox, 757 F.3d at 124. "When 60(b)(6) is the vehicle through

-11-

which Martinez is to be given effect, the claim may well need to
be particularly substantial to militate in favor of equitable
relief." See id.  But here, PCRA counsel did in fact assert
that trial counsel was ineffective, and the PCRA court
considered this claim on the merits.  Thus, Martinez, which held
that "[i]nadequate assistance of counsel at initial-review
collateral proceedings may establish cause for a prisoner's
procedural default of a claim of ineffective assistance at
trial," does not apply in Rhone's case.  See Martinez, 132
S. Ct. at 1315 (emphasis added).

> [p]etitioner couche[d] his first argument
> under the guise of ineffective assistance of
> [trial] counsel stating that Norris E.
> Gelman, Esquire, was ineffective for failing
> to object to and/or move for a mistrial
> and/or obtain judicial rulings following
> allegedly improper, prejudicial comments by
> the prosecutor during questioning and in his
> closing statement.

Commonwealth v. Rhone, No. 2750, at 4 (Pa. Ct. Comm. Pleas
1996).  It concluded that Rhone's claims "lack arguable merit"
and "counsel will not be found ineffective for failing to make a
frivolous objection or motion." See id. at 6.  Rhone is not
entitled to relief under Martinez first because PCRA counsel
raised the issue of trial counsel's ineffectiveness before the
PCRA court, and second because the PCRA court considered and

-12-

rejected this claim on its merits.  See, e.g., Joseph v. Beard, 2015 WL 1443970, at *4 (E.D. Pa. Mar. 27, 2015).  It is of no significance that Rhone now alleges that trial counsel committed additional errors beyond those which he presented to the PCRA and habeas courts.  Rhone presented ineffective assistance of trial counsel claims to the PCRA court which were considered and denied on the merits.  The present motion is a successive petition and he cannot obtain review under Martinez.

Moreover, we agree with the PCRA court that Rhone's claims that trial counsel was ineffective lack merit.  "It is appropriate for a district court, when ruling on a Rule 60(b)(6) motion where the merits of the ineffective assistance claim were never considered prior to judgment, to assess the merits of that claim."  Cox, 757 F.3d at 124.  In 1999, in adopting the R & R by the Magistrate Judge denying Rhone's habeas petition, this court determined that trial counsel was not ineffective.  After finding that many of Rhone's claims had been procedurally defaulted, the R & R considered and rejected arguments that trial counsel was ineffective on the merits.  Rhone cannot now obtain relief under Martinez because his underlying claims that trial counsel was ineffective are devoid of all merit.  See Martinez, 132 S. Ct. at 1319.

-13-

In addition, Rhone's claim for relief was not "made within a 'reasonable time.'"  <u>In re Diet Drugs (Phentermine/ Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.</u>, 383 F. App'x 242, 246 (3d Cir. 2010); <u>Doe</u>, 810 F.3d at 152.  Our Court of Appeals explained that "one of the critical factors in the equitable and case-dependent nature of the 60(b)(6) analysis . . . is whether the 60(b)(6) motion under review was brought within a reasonable time of the <u>Martinez</u> decision."  <u>See Cox</u>, 757 F.3d at 115-16.  It "warn[ed] — that, unless a petitioner's motion for 60(b)(6) relief based on <u>Martinez</u> was brought within a reasonable time of that decision, the motion will fail."  <u>See id.</u> at 116.

The Supreme Court decided <u>Martinez</u> on March 20, 2012. Yet, Rhone did not file the present motion until December 14, 2015, approximately three and a half years after <u>Martinez</u> was decided.  We find that Rhone's motion was not filed within a reasonable time after <u>Martinez</u> was decided.  <u>See Peterson v. Brennan</u>, 2015 WL 3631762, at *3 (E.D. Pa. June 10, 2015), aff'd sub nom. Peterson v. Mahoney, No. 15-2580, at 1 (3d Cir. Oct. 8, 2015); <u>Cox</u>, 757 F.3d at 116.  Rhone has not cited any "extraordinary circumstances" that justify the three and a half year delay.

-14-

Rhone also has not set forth any extraordinary circumstances in support of his claim for relief under Rule 60(b).  Relief is not available where the petitioner has "stated no conceivable bases for reopening under Rule 60(b)(6)" and does "not even acknowledge the reasons for most of the [federal court's] underlying rulings, let alone set forth anything that might constitute 'extraordinary circumstances' warranting relief from those rulings."  See Dougherty v. Advanced Wings LLP, 611 F. App'x 752, 753 (3d Cir. 2015) (citing Cox, 757 F.3d at 120).

III.

We also construe Rhone's motion as seeking relief under Rule 60(d)(1) of the Federal Rules of Civil Procedure, which permits the court to "entertain an independent action to relieve a party from a judgment, order, or proceeding."  See Fed. R. Civ. P. 60(d)(1).  "An independent action brought under Rule 60(d) is generally treated the same as a motion under Rule 60(b)."  Sharpe v. United States, 2010 WL 2572636, at *2 (E.D. Pa. June 22, 2010) (citing Nevada VTN v. Gen. Ins. Co. of Am., 834 F.2d 770, 775 (9th Cir. 1987)).  "[T]he requirements for an independent action under Rule 60(d)(1) are at least as stringent" as those for a Rule 60(b)(6) motion.  See United States v. Brown, 2013 WL 3742444, at *9 (E.D. Pa. July 17, 2013) (citing United States v. Beggerly, 524 U.S. 38, 46–47 (1998)).

-15-

"In other words, a petitioner cannot relitigate the merits of his habeas petition under the guise of a Rule 60(d) motion." Sharpe, 2010 WL 2572636, at *2.

As under Rule 60(b)(6), relief is available under Rule 60(d)(1) only in extraordinary circumstances where relief is necessary to "prevent a grave miscarriage of justice." See Jackson v. Danberg, 656 F.3d 157, 166 (3d Cir. 2011) (quoting Beggerly, 524 U.S. at 47). The petitioner "must show a meritorious claim or defense" and "relief under Rule 60(d) is reserved for the rare and exceptional case where a failure to act would result in a miscarriage of justice." See Sharpe, 2010 WL 2572636, at *2 (citing Beggerly, 524 U.S. at 42–46); Brown, 2013 WL 3742444, at *8-9.

As explained above, Rhone's claims that trial counsel was ineffective must fail. In addition, as discussed above, Rhone has not supplied any extraordinary circumstances or reason to believe that a grave miscarriage of justice has occurred in this case. Accordingly, we will deny his request for relief under Rule 60(d)(1).

IV.

Rhone further claims that he is entitled to relief under Rule 60(d)(3), which authorizes the court to "set aside a judgment for fraud on the court." See Fed. R. Civ. P. 60(d)(3).

-16-

Although generally final judgments cannot be altered, the court may make an exception pursuant to Rule 60(d)(3) where the judgment was fraudulently obtained.  See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245 (1944), overruled on other grounds, Standard Oil Co. of Cal. v. United States, 429 U.S. 17, 18 n.2 (1976).  As our Court of Appeals has explained "[i]n order to meet the necessarily demanding standard of proof of fraud upon the court we conclude that there must be: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court" supported by "clear, unequivocal and convincing evidence."  See Herring v. United States, 424 F.3d 384, 386–87 (3d Cir. 2005); United States v. Burke, 193 F. App'x 143, 144 (3d Cir. 2006).  The fraud "must constitute egregious misconduct . . . such as bribery of a judge or jury or fabrication of evidence by counsel."  See Herring, 424 F.3d at 390 (citations and internal quotation marks omitted).

        For example, in Hazel-Atlas, there was "conclusive" proof that a party and its attorneys had committed egregious misconduct by "a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals."  See Hazel-Atlas, 322 U.S. at 245-46.  The party and its attorneys had drafted an article in support of its

-17-

patent claims.  They then fraudulently published the article and
argued to the Patent Office and our Court of Appeals that the
article provided support for their claims as if it had been
written by a third-party.  The Supreme Court held that this was
a fraud on the court.

On the other hand, courts in this district have held
that false answers to interrogatories and perjured testimony
"do[ ] not rise to the level of fraud upon the court."  See
Advanced Multilevel Concepts, Inc. v. Bukstel, 2014 WL 6907973,
at *9 (E.D. Pa. Dec. 9, 2014) (quoting Petry v. Gen. Motors
Corp., 62 F.R.D. 357, 361 (E.D. Pa. 1974)); Herring, 424 F.3d at
390.

In his pending motion, Rhone appears to assert that
counsel for the Commonwealth committed a fraud in failing to
inform the state trial court in 1991 about:  (1) a 1975
memorandum from the Homicide Division stating that tire
impressions from the car in which Rhone was apprehended "do not
compare favorably with photographs of tire impressions removed
from the scene" and (2) a "show up" following the murder at
which no witness was able to identify Rhone.  He again alleges
that trial counsel was ineffective in failing to object to the
prosecution's purported misconduct.  However, as the
Commonwealth noted in its responsive brief, we do not have

-18-

authority "to overturn a <u>state</u> criminal conviction obtained by fraud, outside of power authorized by statute; <u>i.e.</u> through a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254." <u>See</u> <u>Wells v. King</u>, 340 F. App'x 57, 58 (3d Cir. 2009).

  In apparent acknowledgment of this, Rhone contends in his reply brief that the alleged fraud occurred before the <u>federal</u> court in 1999 when counsel for the Commonwealth failed to supply the 1975 memorandum to the federal court.  He also claims that the Commonwealth committed a fraud on the federal court in failing to inform the court of the 1991 testimony of Detective Brian Muldoon of the Philadelphia Police Department Homicide Division at Rhone's state criminal trial and the 1976 testimony of Carol Impromota, a witness to the murder, at the trial of co-defendant Lonnie Dawson.  This argument is without merit.  Just as perjury and false answers to interrogatories "do[ ] not rise to the level of fraud upon the court," neither is counsel's failure to submit these documents to the federal court.  <u>See</u> <u>Advanced Multilevel</u>, 2014 WL 6907973 at *9.  In responding to Rhone's motion for relief pursuant to § 2254, counsel for the Commonwealth was under no obligation to submit these documents.  <u>See</u> Rules Governing Section 2254 Cases in the United States District Courts, Rule 5; <u>Flamer v. Chaffinch</u>, 774 F. Supp. 211, 215 (D. Del. 1991).  Aside from briefs and orders

-19-

not at issue here, counsel for the Commonwealth was responsible only for "attach[ing] to the answer parts of the transcript that [the Commonwealth] considers relevant."  See Rules Governing Section 2254 Cases in the United States District Courts, Rule 5. Certainly, counsel for the Commonwealth cannot have committed egregious misconduct in failing to submit a document that it was under no duty to provide.  Accordingly, we will deny Rhone's motion for relief under Rule 60(d)(3).[3]

V.

Finally, we turn to Rhone's claim for relief based on actual innocence.  A habeas petitioner may obtain review of a procedurally defaulted claim if he has a viable claim of actual innocence that places the case within the "narrow class of cases . . . implicating a fundamental miscarriage of justice."  See Schlup v. Delo, 513 U.S. 298, 314-15 (1995) (citation omitted). "[T]he fundamental miscarriage of justice exception seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual

---

3.  Rule 60(b)(3) provides relief from judgment based on "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  See Fed. R. Civ. P. 60(b)(3).  However, "an independent action alleging fraud upon the court is completely distinct from a motion under Rule 60(b)."  See Herring, 424 F.3d at 389.  A motion pursuant to Rule 60(b)(3), unlike a motion under Rule 60(d)(3), must be brought within one year of entry of judgment. See Fed. R. Civ. P. 60(c).  Rhone's present motion was filed nearly twenty-five years after judgment was entered.

-20-

interest in justice that arises in the extraordinary case." Id.
at 324.

"A case in which a petitioner seeks to excuse his
procedural default by advancing a claim of actual innocence is
known as a 'gateway' case." See Houck v. Stickman, 625 F.3d 88,
93 (3d Cir. 2010) (citing Albrecht v. Horn, 485 F.3d 103, 122
(3d Cir. 2007)). In other words, actual innocence is "not
itself a constitutional claim, but instead a gateway through
which a habeas petitioner must pass to have his otherwise barred
constitutional claim considered on the merits." See Schlup, 513
U.S. at 315 (quoting Herrera v. Collins, 506 U.S. 390, 404
(1993)). It "depends critically on the validity of" the
underlying claims. See id.

To obtain review based on a theory of actual
innocence, first the petitioner must "support his allegations of
constitutional error with new reliable evidence-whether it be
exculpatory scientific evidence, trustworthy eyewitness
accounts, or critical physical evidence-that was not presented
at trial." See Schlup, 513 U.S. at 324. The petitioner must
"present[ ] evidence of innocence so strong that a court cannot
have confidence in the outcome of the trial." See id. at 316.
Where the new evidence raises "sufficient doubt about [the
petitioner's] guilt to undermine confidence in the result of the

trial without the assurance that that trial was untainted by constitutional error" the new evidence meets the "threshold showing of innocence [to] justify a review of the merits of the constitutional claims." See id. at 317. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Id. at 316.

Second, the petitioner must "show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." See Houck, 625 F.3d at 93 (citing Schlup, 513 U.S. at 327). In assessing a petitioner's actual innocence claim based on new evidence:

> the habeas court must consider "'all the evidence,'" old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under "rules of admissibility that would govern at trial."

House v. Bell, 547 U.S. 518, 537-38 (2006). Then, "[b]ased on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do." See id. at 538. "The court's function is not to make an independent factual determination about what likely

occurred, but rather to assess the likely impact of the evidence on reasonable jurors." Id. "[I]t bears repeating that the Schlup standard is demanding and permits review only in the 'extraordinary' case." Id.

We need not hold an evidentiary hearing where, after "assess[ing] the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial," we find that no reasonable juror would have acquitted the petitioner in light of the new evidence. See Schlup, 513 U.S. at 331-32; Houck, 625 F.3d at 95.

Here, the jury convicted Rhone after a trial at which:

> the Commonwealth presented a strong case
> based on circumstantial evidence establishing
> the petitioner's guilt. The Commonwealth's
> evidence included a statement by petitioner
> that he had been at the murder scene, and
> witnesses who could place the car in which
> petitioner and his codefendants were
> apprehended at the murder scene, identify the
> number of individuals in that car, and
> identify the hat and other clothing
> petitioner and his codefendants were wearing
> at the time of the murder.

See R. & R. at 13. There was substantial circumstantial evidence to support the jury's decision to convict Rhone. Witnesses testified that "three men in a green cadillac" were responsible for the murder and "[t]wo of the men wore brown hats; one of the hats was identified as a brown jeff cap." See

-23-

Commonwealth v. Rhone, 619 A.2d 1080, 1081 (Pa. Super Ct. 1993). There was also testimony that "[p]olice stopped a car matching the description" and "[a]t the time of his arrest [Rhone] was wearing a brown jeff cap." See id. There was "police testimony that [Rhone] had been seen the day before, in the same green cadillac, driving behind the victim's car." See id. Significantly, Rhone told the police shortly after the shooting that he was present at the scene of the shooting and heard the gunshots. See id. at 1081-82.

Rhone now claims that an absence of eyewitnesses and physical evidence connecting him to the crime are new evidence. He contends that: (1) no one identified him as the perpetrator at a "show up" after the murder; (2) the green Cadillac in which he was apprehended contained weapons that did not match the murder weapon[4]; (3) "the shooter wearing the Jeff-Cap" was identified as a "light brown black male"; and (4) that there was no physical evidence connecting Rhone to the crime.[5] Even assuming that these allegations are new evidence, "[w]e do not

---

4. The murder weapon was found in a street sewer near the scene of the crime.

5. Rhone also contends that trial counsel erroneously failed to object to evidence admitted by the prosecution and instructions administered by the court. Not only were these arguments already rejected by the state courts and the federal court as discussed above, but they are legal arguments and not new evidence of Rhone's innocence.

-24-

think that a reasonable juror would acquit [the petitioner] after hearing this evidence, especially in light of all the other evidence of his guilt." See Houck, 625 F.3d at 96-97. Rhone was wearing a "Jeff" cap when he was arrested, admitted to being present at the crime scene when the shooting occurred, and was apprehended shortly after the murder in a green Cadillac that matched the description of the getaway car. Rhone cannot "show that, in light of all the evidence, it is more likely than not that no reasonable, properly instructed juror would have convicted him." See United States v. Tyler, 732 F.3d 241, 254 (3d Cir. 2013) (citing Bousley v. United States, 523 U.S. 614, 623 (1998)).

Rhone further contends that he could not have committed the murder because he was apprehended while riding in a green Cadillac on the Schuylkill Expressway some unspecified number of minutes after the murder took place. According to Rhone, a police officer arrived "[a]t approximately 12:45 pm . . . at the shooting scene" at 8654 Bayard Street in Philadelphia, and Rhone was pulled over on the Schuylkill Expressway at 1:07 P.M. (Emphasis added). He claims that this timeline proves that he could not have been at the murder scene when the murder took place. This argument is unavailing. The officer estimated that he arrived at the murder scene at

-25-

"approximately 12:45 pm."   The murder took place at some point before the officer arrived at the scene.   Thus, Rhone had approximately twenty minutes, if not more, to kill Williams and flee the scene in the green Cadillac before being apprehended in a green Cadillac on the Schuylkill Expressway.

In the brief accompanying his motion, Rhone claims that "it would be almost impossible for the shooting to occur at 12:52 and the police to spot a green Cadillac on the Expressway at approximately 12:52."   His timeline argument is inconsistent and unclear.   We are not persuaded by his argument, nearly forty years later, that this uncertain timeline of events proves that he could not have been at the murder scene.   Rhone told police shortly after the shooting that he was present at the scene of the shooting and heard the gunshots.   In light of his statement to the police and other evidence placing him at the scene of the murder, we cannot say that no reasonable juror would convict Rhone, even if Rhone were able to present his "new" evidence.

Additionally, Rhone claims that a memorandum by the Homicide Division investigating the murder in November 1975 is new evidence that entitles him to habeas relief.   He cites a statement in that document that tire impressions of the green Cadillac in which he was apprehended "do not compare favorably with photographs of tire impressions removed from the scene."

-26-

Rhone argues that if his trial counsel had elicited testimony from the memorandum's author, the outcome at trial would have been different.  We disagree.  In light of all the evidence of Rhone's guilt, including his statement to police that he was present at the scene of the murder, this testimony concerning the tire tracks, in our view, would not persuade a reasonable juror to acquit.  As in Houck, the memorandum "is of limited value as it is unlikely it would convince a reasonable juror that [the petitioner] could not have been one of [the victim's] assailants."  See Houck, 625 F.3d at 96.

Rhone does not even argue "that no reasonable juror would convict him after considering the newly supplemented record."  See id. at 95.  Instead, Rhone contends only that this evidence creates "a reasonable probability of an acquittal."  This is insufficient.  Rhone has the burden to prove that no reasonable juror would have convicted him in light of the new evidence, not merely that there is a reasonable probability that a jury might acquit him if presented with this evidence.  Rhone ignores the weight of the evidence against him at trial, which, even taking into account the so-called new evidence, remains sufficient to support a conviction.  Accordingly, we will deny Rhone's request for review and a hearing based on allegations of actual innocence.

-27-